AO 106 (Rev. 04/10)  Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT
for the
Western District of Washington

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>Information Associated with Meta Platforms, Inc.<br>Account: rick_sky2020 | )<br>)<br>)  Case No.   MJ22-5016<br>)<br>)<br>) |

> FILED _____ LODGED
> _____ RECEIVED
> **February 1, 2022**
> CLERK U.S. DISTRICT COURT
> WESTERN DISTRICT OF WASHINGTON AT TACOMA
> BY _____ DEPUTY

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
Meta Platforms, Inc., account rick_sky2020, as described in Attachment A, incorporated herein by reference.

located in the _____ Nothern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, attached hereto and incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g) | Prohibited Person in Possession of Firearm; |
| 18 U.S.C. § 922 (a)(6) | False Statement in Connection with Acquisition of a Firearm; |
| 18 U.S.C. §§ 924(a)(1)(A) and 911 | False Statement to Federal Firearms Licensee; False Claim to United States Citizenship |

The application is based on these facts:

✓ See Affidavit of FBI Task Force Officer Jordan Vossler, attached hereto and incorporatated herein by reference.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

_____ *vossler*
*Applicant's signature*

Jordan Vossler, Task Force Officer, FBI
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date:   02/01/2022

_____
*Judge's signature*

City and state:  Tacoma, Washington

David W. Christel, United States Magistrate Judge
*Printed name and title*

USAO: 2021R01432

**A F F I D A V I T**

STATE OF WASHINGTON    )
                             )    ss
COUNTY OF CLARK         )

I, Jordan Vossler, being first duly sworn, depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.      1. I am a Deportation Officer with the U.S. Immigration and Customs Enforcement (ICE), Enforcement and Removal Operations (ERO) and have been since September 2015. I have been employed by the Department of Homeland Security for approximately 11 years and am currently stationed in Portland, Oregon. I previously served as an Immigration Enforcement Agent from February 2011 to September 2015. I am currently assigned to the Criminal Alien Program (CAP) where I am responsible for conducting administrative and criminal investigations into possible violations of the federal law with an emphasis on immigration law. I am also collaterally assigned to the Federal Bureau of Investigations (FBI) Safe Street Task Force in Vancouver, Washington where I am responsible for conducting criminal investigations involving but not limited to: violent crimes, firearm offenses, transnational gangs and narcotic trafficking. As part of this assignment, I have received Special Deputation with the Department of Justice as an FBI Task Force Officer. My training and experience include graduating the ICE DRO Basic Immigration Enforcement Academy in 2011, completing the ICE Field Operations Training Program in 2015, and completing the Field Operations Training Program-Prosecutions Module in 2019 at the Federal Law Enforcement Training Centers in Glynco, Georgia and Charleston, South Carolina. I have also assisted with the service of multiple search warrants with state and local law enforcement agencies as well as with the FBI, Drug Enforcement Administration (DEA), and Bureau of Alcohol Tobacco, Firearms, and Explosives (ATF).

2.      I make this affidavit in support of an application for a search warrant for information associated with a certain account, associated with **Joao Ricardo DeBorba,** that

Affidavit of Jordan Vossler - 1
USAO# 2021R01432

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

is stored at premises controlled by Meta Platforms, Inc. (formerly, Facebook, Inc.) ("Meta") a provider of electronic communications services headquartered at 1601Willow Road, Menlo Park, CA 94025. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Meta to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

3.     The facts set forth in this Affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement officers; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation.

4.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 18, United States Code, Section 922(g) (alien/person subject to a domestic violence restraining order/person convicted of a misdemeanor crime of domestic violence in possession of firearms), Title 18, United States Code, Section 922(a)(6) (false statement in connection with the acquisition of a firearm), Title 18, United States Code, Section 924(a)(1)(A) (false statement to a federal firearms licensee), and Title 18, United States Code, Section 911 (false claim to United States citizenship). have been committed by **Joao Ricardo DeBorba**. There is also probable cause to search the information described in Attachment A for evidence of these crimes further described in Attachment B.

//

Affidavit of Jordan Vossler - 2
USAO# 2021R01432

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**JURISDICTION**

5.     This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A), (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

**THE INVESTIGATION**

<u>**DeBorba's Entry to the United States and Citizenship Status**</u>

6.     In August of 2021, I received information that **Joao Ricardo DeBorba** was arrested for charges involving domestic violence and a violation of a no contact order in Clark County, Washington. This referral stated that **DeBorba** was an undocumented immigrant. My review of immigration records indicate that **DeBorba** entered the United States on or about November 10, 1999, via the Miami (Florida) International Airport, using a nonimmigrant B2 visitor visa. When entering on that date, **DeBorba** provided his Brazilian Passport (no. xxxxx642) stating he was a citizen of Brazil. He was admitted to the United States for a period of up to six months requiring him to depart the United States on or before May 9, 2000.

7.     Based on my investigation of DHS immigration records, there is no record of **DeBorba** ever departing the United States or applying for an extension of stay, and it appears he overstayed his visa and is in violation of 237(a)(1)(B) of the Immigration and Nationality Act. There is also no record in any immigration database of **DeBorba** ever receiving permission to legally remain in the United States or any other legal entry at any time after November 10, 1999. I have also obtained a copy of **DeBorba's** current Brazilian passport, which states that he was born in Joinville, SC, Brazil. and listed him as a national of Brazil. This passport appears to have been issued in Boston, Massachusetts on January 24, 2018, and is due to expire on January 23, 2028. Information from a Brazilian official also confirms this passport is valid and in their system.

//

//

Affidavit of Jordan Vossler - 3
USAO# 2021R01432

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**DeBorba's Social Security Card Application and Claims to U.S. Citizenship**

8.      I have learned from Special Agent Scott Jones with the Social Security Administration, Office of Inspector General, that **DeBorba** was issued Social Security number (SSN) xxx-xx-1075 on January 17, 2001, by the Social Security Administration's Ogdon, Utah Field Office. I have reviewed the Application for a Social Security Card submitted by **DeBorba** in obtaining that Social Security number. The application is signed by **DeBorba**, and states he was born in Joinville, Brazil. Also, on the "citizenship" question, the box is checked stating that **DeBorba** was a "Legal Alien Not Allowed To Work." The application indicates that, in support of this application, **DeBorba** provided his previously mentioned Brazilian passport, an I-94 entry document for a B2 visitor visa, and a "DMV" letter. There is no record in immigration databases of the I-94 document under the number **DeBorba** provided, and I believe it to be a fraudulent document presented in order to obtain a Social Security number. Based on this application, **DeBorba** was issued a Social Security number bearing the notation, "NOT VALID FOR EMPLOYMENT." No other replacement card was issued. I believe this Social Security card was most likely issued in order for **DeBorba** to obtain state, federal, and/or other benefits, and Special Agent Jones stated it was likely issued in error since a person with a B2 visa is not authorized to work in the United States and a such a document is generally not used for establishing eligibility for a Social Security number, nor does a driver's license constitute a valid nonwork reason for assigning a Social Security number.

9.      I have reviewed an image of **DeBorba's** Social Security card. The card bears the notation, "NOT VALID FOR EMPLOYMENT" above the Social Security number, which is over the Social Security Administration seal.

10.      I have obtained copies of **DeBorba's** I-9 Employment Eligibility Verification forms used in connection with his employment with JC Custom Machining & Design, Inc., and A-1 Precision, Inc. On the I-9 form, the applicant is asked to attest, under penalty of perjury, to his or her citizenship status. On both forms, which bear **DeBorba's** signature, the box is checked next to "A citizen of the United States." The supporting documentation for

Affidavit of Jordan Vossler - 4
USAO# 2021R01432

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

the I-9 relating to JC Custom Machining & Design, Inc. shows **DeBorba** submitted a Massachusetts driver's license and a social security card bearing what appears to be Social Security number xxx-xx-1075. Notably, the Social Security card does not bear the notation "NOT VALID FOR EMPLOYMENT." Further, the card does not bear the seal of the Social Security Administration, which is the agency that issues Social Security cards, but rather, it bears the seal of the Department of Health and Human Services. The supporting documentation for the I-9 form relating to A-1 Precision, Inc. (dated June 10, 2019) shows **DeBorba** submitted a Washington driver's license and another Social Security card bearing SSN xxx-xx-1075 and the seal of the Social Security Administration, but without the "NOT VALID FOR EMPLOYMENT" notation. The area of the card where the notation is supposed to be (over the upper portion of the seal) appears to have been blurred or erased, indicating the card was altered to remove the "NOT VALID FOR EMPLOYMENT" disclaimer.

11.     Information provided by Special Agent Mazzuca with the Federal Aviation Administration revealed that **DeBorba** attempted to get a student pilots license in Massachusetts. On or about March 19, 2014, and April 12, 2015, he stated he was a citizen of Brazil on official government document FAA Form 8500-8.

**DeBorba's Possession of Firearms**

12.     On February 25, 2019, **DeBorba** applied for a Concealed Pistol License in the state of Washington. I have obtained a copy of the Concealed Pistol License Application signed by **DeBorba**, which states that he was born in Joinville, SC Brazil. Next to the question, "Are you a United States citizen?" the box is checked "Yes." Next to the questions, "Are you a permanent resident alien?" and "Are you a legal alien temporarily residing in Washington?" the boxes are checked "No." The blank related to I-94 entry information was left blank. (This CPL was revoked by the Clark County Sheriff's Office on or about November 13, 2020, due to **DeBorba's** domestic violence convictions in October 2020.)

13.     I have obtained Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) firearms tracing information related to DeBorba's possession of a number of firearms.

Affidavit of Jordan Vossler - 5
USAO# 2021R01432

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

According to an ATF Firearms Transaction Record (Form 4473), on March 23, 2019, **DeBorba** purchased a Savage Arms model M11 rifle from a Sportsman's Warehouse in Portland, Oregon. The Form 4473 bears **DeBorba's** signature, and under question 12.a., entitled, "County of Citizenship," the box next to "United States of America" is checked. The form also provided the answer "No" to questions 12.c. and 12.d.1., which read, "Are you an alien illegally or unlawfully in the United States?" and "Are you an alien who has been admitted to the United States under nonimmigrant visa?" In addition, the space that directs an alien to provide their admission number (I-94) was left blank.

14.     On April 4, 2019, as documented in another Form 4473, **DeBorba** purchased a Sig Sauer model 1911 .45 caliber pistol from a Cabela's store in Lacey, Washington. The Form 4473 for the transaction bears **DeBorba's** signature, again represents his country of citizenship as the United States of America, provides the answer "No" to the questions about being an alien, and omits **DeBorba's** I-94 number.

15.     On April 13, 2019, as documented in a Form 4473, **DeBorba** purchased a KelTec model Sub-2000 .40 caliber rifle from Fast Cash Inc. in Lebanon, Oregon. The Form 4473 for the transaction bears **DeBorba's** signature, represents his country of citizenship as the United States of America, provides the answer "No" to the questions about being an alien, and omits **DeBorba's** I-94 number.

16.     On April 14, 2019, **DeBorba** was arrested by the Washington State Patrol (WSP) in Vancouver, Washington for Driving Under the Influence. At that time, **DeBorba** was in possession of a Glock 26 pistol and his Concealed Pistol License, though he initially denied to the arresting officer that he had a firearm. According to ATF firearms tracing information, this Glock 26 pistol (serial number BGBU719) was originally sold as a "receiver" (a firearm part) in July 2018 in a sale to a private party, but there is no record of subsequent transfers of the receiver or the assembled firearm made from the receiver. It is unclear at this time how or when **DeBorba** obtained the Glock 26 pistol, which is currently in the custody of the WSP.

//

Affidavit of Jordan Vossler - 6
USAO# 2021R01432

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

17.     On April 20, 2019, as documented in a Form 4473, **DeBorba** purchased a Century Arms model RAS47 7.62 caliber rifle from Keith's Sporting Goods in Gresham, Oregon. As before, the Form 4473 for the transaction bears **DeBorba's** signature, represents his country of citizenship as the United States of America, provides the answer "No" to the questions about being an alien, and omits **DeBorba's** I-94 number.

18.     On May 8, 2019, as documented in a Form 4473, **DeBorba** purchased a Rock Island Armory model M200 .38 Special caliber revolver from Brass Tacks Munitions in Vancouver, Washington. Once again, the Form 4473 for the transaction bears **DeBorba's** signature, represents his country of citizenship as the United States of America, provides the answer "No" to the questions about being an alien, and omits **DeBorba's** I-94 number.

19.     On November 10, 2019, **DeBorba** was arrested in Vancouver, Washington by the Vancouver Police Department (VPD) for assaulting his wife. On November 12, 2019, a Domestic Violence No-Contact Order was issued by the District Court of Washington for the County of Clark, restraining **DeBorba** from, among other things, harassing, stalking, threatening, assaulting, or causing bodily injury to his wife, and prohibiting **DeBorba** from possessing any firearms and ordering him to immediately surrender any firearms in his possession. The order was issued in open court with **DeBorba** present, and bears his signature acknowledging receipt of the order. On November 14, 2019, a replacement Domestic Violence No-Contact Order was issued under the same terms, but allowing for third-party contact between **DeBorba** and his wife regarding child visitation and for electronic communication between **DeBorba** and his children. **DeBorba** was again present and acknowledged receiving a copy of the order by signing.

20.     On November 15, 2019, the Vancouver Police Department (VPD) in Vancouver, Washington arrested **DeBorba** for violations of the Domestic Violence No-Contact Order, and seized from his residence approximately twenty firearms along with other firearm parts and ammunition which he had failed to surrender as required under the Order. These firearms included the Savage Arms, Sig Sauer, KelTec, Century Arms, and

//

Affidavit of Jordan Vossler - 7
USAO# 2021R01432

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

Rock Island Armory firearms mentioned above, and are currently in the possession of VPD for safekeeping.

21.     On October 14, 2020, **DeBorba** was convicted of Assault in the Fourth Degree – Domestic Violence and two counts of Domestic Violence Court Order Violation in the Superior Court of the State of Washington, County of Clark, in case number 20-1-01294-06. In relation to that case, a new Domestic Violence No Contact Order was issued, again restraining **DeBorba** from, among other things, harassing, stalking, threatening, assaulting, or causing bodily injury to his wife. **DeBorba** was present and signed the order. The order expires on October 14, 2022.

22.     **DeBorba** is currently facing a pending felony Domestic Violence Court Order Violation with a future court date set. Based on my review of criminal records, during booking for these arrests, **DeBorba** claimed to local jail staff that he was a United States Citizen born in South Carolina.

23.     In April of 2021, police responded to an assault between **DeBorba** and his roommates. At that time, both roommates stated that **DeBorba** was still in possession of firearms that police did not seize and that **DeBorba** worked for a firearms retailer. These roommates stated that **DeBorba** was still in possession of a bolt-action rifle. They also stated that he often carried the rifle in a backpack because it could be disassembled, and described it as a black rifle with a synthetic stock, gold barrel and scope or similar optic. The roommates reported **DeBorba** was last seen with the rifle about four weeks prior to the incident. Since the time of this report, his roommates appear to have moved out and **DeBorba** is believed to live alone.

24.     In August of 2021, a confidential source provided me with evidence of **DeBorba** operating and firing a firearm. The evidence consisted of a video **DeBorba** posted on his Instagram account with the username rick_sky2020. In this video **DeBorba** can be seen firing a black rifle outdoors. The video provided appeared to be a recording of the screen of another phone and due to the focus of the recording the date, location and account name could not be clearly read. The confidential source said they no longer had access to

Affidavit of Jordan Vossler - 8
USAO# 2021R01432

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**DeBorba's** Instagram page but confirmed the account name and stated they have seen videos of **DeBorba** operating firearms on this page. The confidential source also stated **DeBorba** uses the name Rick Sky on social media. A search of Rick_Sky2020 reveals the Instagram account is set to private and the cover photo is of a stormy sea and cloudy sky as of January 26, 2022.

25.     **DeBorba's** Facebook/Meta account uses the username "Rick Sky" and as of December 26, 2021, also had a cover photo of a stormy sea and cloudy sky that appears to be the same or a very similar photo as the phone currently used on the Instagram account Rick_Sky2020. **DeBorba** has since changed this Facebook cover photo to a picture of himself that appears to be a match of his passport and Department of Licensing photographs. On his account he also has multiple munition/firearm companies listed as "likes" including Ballistic Concepts LLC and Bear Creek Arsenal. He is also listed on this account as being from Joinville, Santa Catarina, Brazil and lists his phone number as 971-220-4244, which matches previous records found for **DeBorba**.

26.     The confidential source also provided information for **DeBorba's** YouTube Channel, titled "joao deborba," where on March 22, 2019, **DeBorba** posted two videos of himself holding and operating a firearm at a firing range. I last viewed this page on January 25, 2022, and these videos were still posted. This same source also stated that members of **DeBorba's** family have also observed him with firearms since the time VPD seized firearms from him.

27.     **DeBorba's** last known employer, Brass Tacks Munitions located in Vancouver, Washington, also appears to be a munitions company per their website. Further investigation revealed that they are/were also a firearm retailer and **DeBorba** has used this company for at least one known firearm purchase. I have also received information that **DeBorba** may still be in contact with this employer and volunteering on site. **DeBorba** is known to have worked as a machinist and has the ability to work on firearm parts. It appears this company now makes carbon fiber gun parts including rifle stocks.

//

## BACKGROUND CONCERNING INSTAGRAM

28.     Instagram is a service owned by Meta, a United States company and a provider of an electronic communications service as defined by 18 U.S.C. §§ 3127(1) and 2510. Specifically, Instagram is a free-access social networking service, accessible through its website and its mobile application, that allows subscribers to acquire and use Instagram accounts, like the target account(s) listed in Attachment A, through which users can share messages, multimedia, and other information with other Instagram users and the general public.

29.     Meta collects basic contact and personal identifying information from users during the Instagram registration process. This information, which can later be changed by the user, may include the user's full name, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, credit card or bank account number, and other personal identifiers. Meta keeps records of changes made to this information.

30.     Meta also collects and retains information about how each user accesses and uses Instagram. This includes information about the Internet Protocol ("IP") addresses used to create and use an account, unique identifiers and other information about devices and web browsers used to access an account, and session times and durations.

31.     Each Instagram account is identified by a unique username chosen by the user. Users can change their usernames whenever they choose but no two users can have the same usernames at the same time. Instagram users can create multiple accounts and, if "added" to the primary account, can switch between the associated accounts on a device without having to repeatedly log-in and log-out.

32.     Instagram users can also connect their Instagram account to a Facebook account to utilize certain cross-platform features, and multiple Instagram accounts can be connected to a single Meta account. Instagram accounts can also be connected to certain third-party websites and mobile apps for similar functionality. For example, an Instagram user can "tweet" an image uploaded to Instagram to a connected Twitter account or post it to

Affidavit of Jordan Vossler - 10
USAO# 2021R01432

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

a connected Facebook account, or transfer an image from Instagram to a connected image printing service. Meta maintains records of changed Instagram usernames, associated Instagram accounts, and previous and current connections with accounts on Facebook and third-party websites and mobile apps.

33.     Instagram users can "follow" other users to receive updates about their posts and to gain access that might otherwise be restricted by privacy settings (for example, users can choose whether their posts are visible to anyone or only to their followers). Users can also "block" other users from viewing their posts and searching for their account, "mute" users to avoid seeing their posts, and "restrict" users to hide certain activity and prescreen their comments. Instagram also allows users to create a "close friends list" for targeting certain communications and activities to a subset of followers.

34.     Users have several ways to search for friends and associates to follow on Instagram, such as by allowing Meta to access the contact lists on their devices to identify which contacts are Instagram users. Meta retains this contact data unless deleted by the user and periodically syncs with the user's devices to capture changes and additions. Users can similarly allow Meta to search an associated Facebook account for friends who are also Instagram users. Users can also manually search for friends or associates.

35.     Each Instagram user has a profile page where certain content they create and share ("posts") can be viewed either by the general public or only the user's followers, depending on privacy settings. Users can customize their profile by adding their name, a photo, a short biography ("Bio"), and a website address.

36.     One of Instagram's primary features is the ability to create, edit, share, and interact with photos and short videos. Users can upload photos or videos taken with or stored on their devices, to which they can apply filters and other visual effects, add a caption, enter the usernames of other users ("tag"), or add a location. These appear as posts on the user's profile. Users can remove posts from their profiles by deleting or archiving them. Archived posts can be reposted because, unlike deleted posts, they remain on Meta's servers.

//

Affidavit of Jordan Vossler - 11
USAO# 2021R01432

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

37.     Users can interact with posts by liking them, adding or replying to comments, or sharing them within or outside of Instagram. Users receive notification when they are tagged in a post by its creator or mentioned in a comment (users can "mention" others by adding their username to a comment followed by "@"). An Instagram post created by one user may appear on the profiles or feeds of other users depending on a number of factors, including privacy settings and which users were tagged or mentioned.

38.     An Instagram "story" is similar to a post but can be viewed by other users for only 24 hours. Stories are automatically saved to the creator's "Stories Archive" and remain on Meta's servers unless manually deleted. The usernames of those who viewed a story are visible to the story's creator until 48 hours after the story was posted.

39.     Instagram allows users to broadcast live video from their profiles. Viewers can like and add comments to the video while it is live, but the video and any user interactions are removed from Instagram upon completion unless the creator chooses to send the video to IGTV, Instagram's long-form video app.

40.     Instagram Direct, Instagram's messaging service, allows users to send private messages to select individuals or groups. These messages may include text, photos, videos, posts, videos, profiles, and other information. Participants to a group conversation can name the group and send invitations to others to join. Instagram users can send individual or group messages with "disappearing" photos or videos that can only be viewed by recipients once or twice, depending on settings. Senders can't view their disappearing messages after they are sent but do have access to each message's status, which indicates whether it was delivered, opened, or replayed, and if the recipient took a screenshot. Instagram Direct also enables users to video chat with each other directly or in groups.

41.     Instagram offers services such as Instagram Checkout and Facebook Pay for users to make purchases, donate money, and conduct other financial transactions within the Instagram platform as well as on Facebook and other associated websites and apps. Instagram collects and retains payment information, billing records, and transactional and other information when these services are utilized.

Affidavit of Jordan Vossler - 12
USAO# 2021R01432

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

42.     Instagram has a search function which allows users to search for accounts by username, user activity by location, and user activity by hashtag. Hashtags, which are topical words or phrases preceded by a hash sign (#), can be added to posts to make them more easily searchable and can be "followed" to generate related updates from Instagram. Meta retains records of a user's search history and followed hashtags.

43.     Meta collects and retains location information relating to the use of an Instagram account, including user-entered location tags and location information used by Meta to personalize and target advertisements.

44.     Meta uses information it gathers from its platforms and other sources about the demographics, interests, actions, and connections of its users to select and personalize ads, offers, and other sponsored content. Meta maintains related records for Instagram users, including information about their perceived ad topic preferences, interactions with ads, and advertising identifiers. This data can provide insights into a user's identity and activities, and it can also reveal potential sources of additional evidence.

45.     In some cases, Instagram users may communicate directly with Meta about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

46.     For each Instagram user, Meta collects and retains the content and other records described above, sometimes even after it is changed by the user (including usernames, phone numbers, email addresses, full names, privacy settings, email addresses, and profile bios and links).

47.     **DeBorba** has previously posted videos on the Instagram account Rick_Sky2020 of him operating and firing firearms. Multiple sources have stated that he has continued to possess firearms which he is not authorized to have due to his domestic violence conviction and his domestic violence restraining order. I am requesting data that

Affidavit of Jordan Vossler - 13
USAO# 2021R01432

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

includes videos and photographs of **DeBorba** possessing, holding, operating, and/or firing firearms. In my training and experience, evidence of who was using Instagram and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above. This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

48.     For example, the stored communications and files connected to an Instagram account may provide direct evidence of the offenses under investigation. Based on my training and experience, photos and videos are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation. In addition, such photos and videos often contain metadata, such as the date, time, and location the photos and videos were taken, which can potentially establish where and when a crime was committed.

49.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Meta can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos (and the data associated with the foregoing, such as geo-location, date and time) may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

50.     Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on

Affidavit of Jordan Vossler - 14
USAO# 2021R01432

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

the account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

51.     Therefore, Meta's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Instagram. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

52.     Pursuant to Title 18, United States Code, Section 2703(g), this application and affidavit for a search warrant seeks authorization to permit Meta, and its agents and employees, to assist agents in the execution of this warrant. Once issued, the search warrant will be presented to Meta with direction that it identify the Meta account described in Attachment A to this affidavit, as well as other subscriber and log records associated with the accounts, as set forth in Section I of Attachment B to this affidavit.

53.     The search warrant will direct Meta to create an exact copy of the specified account and records.

54.     I, and/or other law enforcement personnel will thereafter review the copy of the electronically stored data, and identify from among that content those items that come within the items identified in Section II to Attachment B, for seizure.

55.     Analyzing the data contained in the forensic image may require special technical skills, equipment, and software. It could also be very time-consuming. Searching by keywords, for example, can yield thousands of "hits," each of which must then be reviewed in context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant "hit" does not end the review process. Keywords used originally need to be modified continuously, based on interim results. Certain file formats, moreover, do not lend themselves to keyword searches, as keywords, search text, and many common e-mail, database and spreadsheet applications do not store data as searchable text. The data may be saved, instead, in proprietary non-text format. And, as the volume of

Affidavit of Jordan Vossler - 15
USAO# 2021R01432

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

storage allotted by service providers increases, the time it takes to properly analyze recovered data increases, as well.  Consistent with the foregoing, searching the recovered data for the information subject to seizure pursuant to this warrant may require a range of data analysis techniques and may take weeks or even months. All forensic analysis of the data will employ only those search protocols and methodologies reasonably designed to identify and seize the items identified in Section II of Attachment B to the warrant.

56.     Based on my experience and training, and the experience and training of other agents with whom I have communicated, it is necessary to review and seize a variety of e-mail communications, chat logs and documents, that identify any users of the subject account and e-mails sent or received in temporal proximity to incriminating e-mails that provide context to the incriminating communications.

## CONCLUSION

57.     Based on the forgoing, I request that the Court issue the proposed search warrant. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, this Court is "a district court of the United States . . . that - has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). Pursuant to 18 U.S.C. § 2703(g), the government will execute this warrant by serving the warrant on Meta. Because the warrant will be served on Meta, who will then compile the requested records and data, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. Accordingly, by this Affidavit and Warrant, I seek

//
//
//
//
//
//
//

Affidavit of Jordan Vossler - 16
USAO# 2021R01432

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  authority for the government to search all of the items specified in Section I, Attachment B

2  (attached hereto and incorporated by reference herein) to the Warrant, and specifically to

3  seize all of the data, documents and records that are identified in Section II to that same

4  Attachment.

5

6                                                        _vossler_

7                                               JORDAN VOSSLER, Affiant

8                                               Task Force Officer
                                                Federal Bureau of Investigation

9

10          The above-named agent provided a sworn statement to the truth of the foregoing

11  affidavit by telephone on 1st day of February, 2022.

12

13

14                                               _DW Christel_

15                                               DAVID W. CHRISTEL
                                                 United States Magistrate Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ATTACHMENT A**

**Account/s to be Searched**

The electronically stored data, information and communications contained in, related to, and associated with, including all preserved data associated with: Instagram account with username:

**rick_sky2020**

("the Account") as well as all other subscriber and log records associated with the Account, which are located at premises owned, maintained, controlled, or operated by Meta Platforms, Inc., a company headquartered at 1601 Willow Road, Menlo Park, California.

**ATTACHMENT B**

**I.  Section I - Information to be disclosed by Meta Platforms, Inc., for search:**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta Platforms, Inc. ("Meta"), regardless of whether such information is located within or outside of the United States, including any e-mails, records, files, logs, or information that has been deleted but is still available to Meta, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on **January 26, 2022**, Meta is required to disclose the following information to the government for each account or identifier listed in Attachment A:

    A.    All business records and subscriber information, in any form kept, pertaining to the Account, including:

        1.    Identity and contact information (past and current), including full name, e-mail addresses, physical address, date of birth, phone numbers, gender, hometown, occupation, websites, and other personal identifiers;

        2.    All Instagram usernames (past and current) and the date and time each username was active, all associated Instagram and Facebook accounts (including those linked by machine cookie), and all records or other information about connections with Facebook, third-party websites, and mobile apps (whether active, expired, or removed);

        3.    Length of service (including start date), types of services utilized, purchases, and means and sources of payment (including any credit card or bank account number) and billing records;

        4.    Devices used to login to or access the account, including all device identifiers, attributes, user agent strings, and information about networks and connections, cookies, operating systems, and apps and web browsers;

        5.    All advertising information, including advertising IDs, ad activity, and ad topic preferences;

        6.    Internet Protocol ("IP") addresses used to create, login, and use the account, including associated dates, times, and port numbers, **from February 25, 2019 to January 26, 2022.**

        7.    Privacy and account settings, including change history; and

        8.    Communications between Meta and any person regarding the account, including contacts with support services and records of actions taken;

Attachment B - Page 1
USAO# 2021R01432

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

B.    All content (whether created, uploaded, or shared by or with the Account), records, and other information relating to videos (including live videos and videos on IGTV), images, stories and archived stories, past and current bios and profiles, posts and archived posts, captions, tags, nametags, comments, mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata, **from February 25, 2019 to January 26, 2022**;

C.    All content, records, and other information relating to communications sent from or received by the Account **from February 25, 2019 to January 26, 2022.** including but not limited to:

1.    The content of all communications sent from or received by the Account, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available;

2.    All records and other information about direct, group, and disappearing messages sent from or received by the Account, including dates and times, methods, sources and destinations (including usernames and account numbers), and status (such as delivered, opened, replayed, screenshot);

3.    All records and other information about group conversations and video chats, including dates and times, durations, invitations, and participants (including usernames, account numbers, and date and time of entry and exit); and

4.    All associated logs and metadata;

D.    All content, records, and other information relating to all other interactions between the Account and other Instagram users **from February 25, 2019 to January 26, 2022**, including but not limited to:

1.    Interactions by other Instagram users with the Account or its content, including posts, comments, likes, tags, follows (including unfollows, approved and denied follow requests, and blocks and unblocks), shares, invitations, and mentions;

2.    All users the account has followed (including the close friends list), unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow, and of users who have followed, unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow the account;

3.    All contacts and related sync information; and

4.    All associated logs and metadata;

Attachment B - Page 2
USAO# 2021R01432

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

E.    All records of searches performed by the account **from February 25, 2019 to January 26, 2022**; and

F.    All location information, including location history, login activity, information geotags, and related metadata **from February 25, 2019 to January 26, 2022.**

**The Provider is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.**

**II. Section II - Information to be seized by the government**

All information described above in Section I that constitutes **evidence** of violations of 18 U.S.C. § 922(g), 18 U.S.C. § 922(a)(6), 18 U.S.C. § 924(a)(1)(A), and 18 U.S.C. § 911, those violations occurring **from February 25, 2019 to January 26, 2022**, including, for each account or identifier listed on Attachment A, information pertaining to the following matters:

a.    Evidence of **Joao Ricardo DeBorba's** use, possession, acquisition, purchase, or control of any firearms, including any videos, images, posts, comments, and messages concerning firearms, and any associated metadata;

b.    All messages, documents, and profile information, attachments, or other data that serves to identify any persons who use or access the account specified, or who exercise in any way any dominion or control over the specified account;

c.    Any address lists or buddy/contact lists associated with the specified account;

d.    All subscriber records associated with the specified account, including name, address, local and long distance telephone connection records, or records of session times and durations, length of service (including start date) and types of service utilized, telephone or instrument number or other subscriber number or identity, including any temporarily assigned network address, and means and source of payment for such service) including any credit card or bank account number;

e.    any and all other log records, including IP address captures, associated with the specified account;

1          f.      any records of communications between **Joao Ricardo DeBorba,** and

2   any person about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users about the specified account. This to include records of

3   contacts between the subscriber and the provider's support services, as well as records of any actions taken by the provider or subscriber as a result of the communications.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Attachment B - Page 4
USAO# 2021R01432